**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

MARK ADAMS, ET AL.,

Plaintiffs,

v.

BRG SPORTS, INC., et al.,

Defendants.

Case No. 17-cv-00457-BLF

**ORDER:**

**(1) DISMISSING DEFENDANT ALL AMERICAN SPORTS CORPORATION WITHOUT PREJUDICE ON *IN PERSONAM* JURISDICTION GROUNDS;**

**(2) TRANSFERRING ACTION TO THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS AS TO DEFENDANT BRG SPORTS, INC. PURSUANT TO 28 U.S.C. § 1406 AND AS TO DEFENDANT RIDDELL, INC. PURSUANT TO § 1631;**

**(3) TERMINATING AS MOOT PENDING MOTIONS AT ECF 30, 31, 32, 52 WITHOUT PREJUDICE**

In the wake of the media firestorm that has rocked the sport of football surrounding the long term effects of concussions, thirty-four former college football players from around the country have filed a products liability action against the companies involved in the manufacturing, marketing, and sales of the helmets they wore. These college football players (the "Players") allege that Riddell, Inc., BRG Sports, Inc., and All American Sports Corporation (collectively, "Defendants") are liable for their negligent manufacturing of football helmets over a thirty-year period including their failure to warn players of the risks of brain injuries. *See* Complaint, ECF 1. The Players chose to bring this action in the Northern District of California, but here's the catch: none of the Players currently reside or ever played football in California, and none of their injuries occurred in California. In fact, none of the three defendant companies sued by the Players is incorporated or headquartered in California.

Defendants filed a motion to dismiss the Complaint for failure to state a claim, ECF 30, as well as a motion to dismiss for lack of personal jurisdiction with respect to Defendants Riddell and All American Sports, ECF 32. Defendants also moved to sever the Players' claims into thirty-four distinct lawsuits. *See* ECF 31. The Players opposed all of these motions, and filed a motion to amend their complaint. *See* ECF 52.

The Court held a hearing on these pending motions on October 5, 2017. After an extensive discussion at the hearing, while the matters were under submission, the Players informed the Court of their plan to resolve a number of the issues raised in Defendants' motions. *See* ECF 61. Importantly, the Players stated their intent to dismiss All American Sports from this action entirely, and to seek a transfer of the remaining claims against Riddell and BRG Sports to the United States District Court for the Northern District of Illinois.

The Court held a further status conference on November 9, 2017. At that time, the Parties informed the Court that they would stipulate to a dismissal of All American Sports without prejudice on *in personam* jurisdiction grounds. The Parties further stipulated to a transfer of the claims against Riddell and BRG Sports to the Northern District of Illinois.

At the status conference, although the Players indicated a willingness to amend their Complaint to conform to this Court's tentative ruling at the hearing, the Defendants requested a formal ruling on their motion to dismiss pursuant to Rule 12(b)(6). The Court finds that it would be improper to issue a formal ruling on Defendants' motion to dismiss in light of the Parties' stipulated transfer, which, at the Defendants' specific request, is based on lack of personal jurisdiction over Riddell, and based on improper venue with respect to BRG Sports. Nevertheless, the following order lays out the Court's reasoning on Defendants' motion to dismiss, and GRANTS the Parties' stipulated request to transfer this action to the United States District Court for the Northern District of Illinois.

**I.     BACKGROUND**

Plaintiffs in this action consist of thirty-four former collegiate athletes (the "Players") who played football at different colleges and universities at different times over the course of decades. *See* Compl. ¶ 20, ECF 1. The Players allege that they all suffer from "several symptoms

2

indicative of long-term brain and neurocognitive injuries." *Id*. At all relevant times, the Players allege that they "wore Riddell helmets" that Defendants were in the business of "selling, manufacturing, designing, testing, engineering, marketing, modifying, assembling, inspecting, distributing, and controlling." *Id*. ¶¶ 20, 70. Because the Players suffered concussions and other symptoms of brain injuries despite wearing Defendants' allegedly defective helmets, they brought this products liability action against BRG Sports, Inc. ("BRG Sports"), Riddell, Inc. ("Riddell"), and All American Sports Corporation ("All American") for negligence, design defects, and failure to warn of the danger and risks associated with concussions. *See generally* Compl.

Specifically, the Players seek to hold Defendants liable for breaching their duties to properly educate their helmet users of the long-term damages resulting from helmet use, as well as their failure to mitigate injuries associated with the foreseeable use of their products, and failure to provide adequate warnings to their helmet users. *Id.* ¶¶ 16, 118, 123, 127. The Complaint contains allegations that the Players have suffered permanent injuries or remain at an elevated risk for injuries and latent brain damage as a result of Defendants' conduct. *Id*. ¶ 2. These serious neurocognitive injuries include "memory loss, dementia, depression, and CTE and its related symptoms." *Id*. ¶¶ 20, 175.

In their Complaint, the Players lay out a comprehensive background on concussions and brain injuries, including a "primer on concussions" as well as a detailed history of football helmet design. *See, e.g.*, Compl. at 7-20. The Complaint also includes a thorough history of Defendant Riddell's business, and its role in developing the helmets at issue as well as its various marketing campaigns over the years. *Id*. at 20-30. However, as further discussed below, the only information about the Players themselves is contained in a list of their names in the case caption and an incomplete list of the colleges and universities where they played football, which are not tied to a specific player or time period. Importantly, the Complaint does not include the years or locations where each Player played football or wore Riddell helmets, or any salient facts regarding their football careers and injuries they sustained.

## II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The Parties stipulated to a dismissal of Defendant All American Sports Corporation on November 14, 2017. *See* ECF 67. The Court hereby GRANTS the Parties' stipulation to dismiss All American on *in personam* jurisdiction grounds. Therefore, the Court's comments regarding Defendants' 12(b)(6) motion to dismiss are addressed only with respect to Defendants Riddell and BRG Sports.

At the outset, the Court notes that it would be improper to issue a formal ruling on Defendants' 12(b)(6) motion to dismiss because it is inconsistent with the Parties' stipulated request to transfer this action to the Northern District of Illinois for lack of personal jurisdiction over Riddell, and for improper venue with respect to BRG Sports. *See* ECF 65 at 3. However, because Defendants have requested a more formal summary of this Court's determination regarding the deficiencies it identified in the Players' Complaint, the Court summarizes its comments from the hearing on Defendants' 12(b)(6) motion to dismiss which was held on October 5, 2017.

The Court reviewed the Players' Complaint and the briefing on Defendants' motion to dismiss as well as the relevant law. On October 5, 2017, the Court advised counsel for the Players at the hearing of the deficiencies that would need to be cured should this action stay with this Court. In particular, the Court noted that there is a complete lack of information about each of the Players in the Complaint aside from their names and a general list of where they played college football that is not tied to particular Players. Thus, the Court found that the pleadings were primarily insufficient because the Complaint fails to provide Defendants with adequate notice of the specific claims against them by the individual plaintiffs.

Federal Rule of Civil Procedure 8(a) states that "[a] pleading which sets forth a claim for relief…shall contain…a short and plain statement of the claim showing that the pleader is entitled to relief." As explained above, the Complaint is full of information about the history of concussions and Defendants' involvement in the manufacturing, sales and marketing of football helmets generally. However, the lawsuit ultimately seeks relief on behalf of individual plaintiffs. There is simply not enough information in the Complaint regarding each Player's use of the

4

products in question during what time period, or the nature of his injuries that would be required in order to put Defendants on notice of the allegations against them. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that the purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the…claim is and the grounds upon which it rests."). Rule 8 notice pleading "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As explained at the hearing, this Court finds persuasive the Ninth Circuit's reasoning in *Bautista v. Los Angeles Cty.*, 216 F.3d 837, 840–41 (9th Cir. 2000). The Ninth Circuit held that in order to comply with Rule 8, "each plaintiff must plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Id*. at 840. The reasoning from *Bautista* applies here because each football player's use of the helmet and his distinct injuries are based on a separate transaction or occurrence, which is "properly stated in a separate count." *Id*. Therefore, if this action were to remain in this District, the Court would have granted Defendants' 12(b)(6) motion to dismiss and required an amended complaint that included a separate count for each Player. This approach would facilitate a clear presentation of the issues, and allow Defendants to prepare their appropriate defenses or a fully-informed severance request.

In *Bautista*, the Ninth Circuit went on to explain that "[s]eparate counts will be required if necessary to enable the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims." *Id*. The instant case is a textbook example of an action where each individual player's claims arise out of a distinct set of facts, and separate statements will facilitate a clear presentation of the issues. *Id.* at 841 (citing 5 wright & Miller, Federal Practice And Procedure: Civil 2d § 1324). As written, the Complaint does very little to inform pre-trial proceedings. *Bautista*, 216 F.3d at 841 (citing *Anderson v. District Bd. of Trustees,* 77 F.3d 364, 367 (11th Cir.1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").

5

For example, the Players' cause of action for failure to warn is not limited in time and appears to be identically alleged by each Player. *See generally* Compl. Given that the Players played football at different times in different states spanning back as early as 1981, it is highly unlikely that each Player has an identical failure to warn and design defect claim against Defendants. *See also Erone Corp. v. Skouras Theatres Corp.,* 19 F.R.D. 299, 300 (S.D.N.Y. 1956) (directing filing of an amended complaint stating the claims of each plaintiff in a separate count, among other reasons because "there may be defenses available to the defendants which are applicable to one or more plaintiffs but not to the others").

The Court also indicated to counsel at the hearing that the Complaint was deficient and a re-pleading was necessary to separate the specific allegations against Riddell from those against BRG Sports. As written, the theories of liability and the relevant allegations against each Defendant are not clear in the Complaint. At the very least, the Court would be looking for separate factual allegations as to each of the Defendants and what their role was in the alleged injuries of each Player. The fact that the Court reviewed the Complaint and the role of each Defendant remains unclear is a sign of deficient pleading.

At the October 5, 2017, the Players acknowledged this Court's instructions and agreed that they would need to, at a minimum, plead a separate cause of action for each Player that included information such as their schools, positions, injuries and dates of play. *See* ECF 57 at 59:6 ("Hearing Transcript"); *see also* ECF 61 at 1 (Letter from counsel for the Players indicating that they will "replead each of their claims with more particularity, specifically addressing the shortcomings raised by the Court during the October 5 hearing"). Although Defendants requested a formal ruling from this Court granting their motion to dismiss on these grounds, the Court finds that ruling on Defendants' 12(b)(6) motion is improper and inconsistent with Defendants' requested transfer of this case to the Northern District of Illinois pursuant to 28 U.S.C. § 1406 (BRG Sports) and 28 U.S.C. § 1631 (Riddell).

**III. STIPULATON TO TRANSFER VENUE**

The Parties stipulated to transfer venue in this case, and requested an order from this Court transferring this action to the United States District Court for the Northern District of Illinois where both of the remaining Defendants Riddell and BRG Sports are headquartered. *See* ECF 65 at 3 (the "Stipulation"). The Parties agreed in their Joint Case Management Statement and at the Status Conference held on November 9, 2017 that the transfer as to BRG Sports would be pursuant to 28 U.S.C. § 1406 on the grounds that venue is improper in the Northern District of California. Because Riddell contests this Court's personal jurisdiction over it, the Parties stipulated that transfer as to Riddell would be pursuant to 28 U.S.C. § 1631. *See* Stipulation at 3.

**A. Transfer Pursuant to § 1406(a) as to BRG Sports**

In their filings with the Court and at the status conference on November 9, 2017, the Parties stipulated to transfer venue pursuant to § 1406 with respect to BRG Sports for improper venue. Defendants explained that although personal jurisdiction existed over BRG Sports in California at the time that this action was filed—or Defendants did not challenge such jurisdiction—venue is nevertheless improper in the Northern District of California. Defendants explained that BRG Sports has moved its principal place of business from Southern California to Illinois, such that it is now located in the same state as its co-defendant and subsidiary, Riddell. *See* Hearing Transcript 25:11-16; 62:4-16. Thus, this action has no plaintiff or defendant with any connection to the Northern District of California – or to California at all.

A district court may transfer venue of any civil case to another district court where the action could have been brought "for the convenience of the parties and witnesses, in the interest of justice ." 28 U.S.C. § 1404(a). Pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." As such, Section 1406(a) is predicated upon whether or not venue is "improper" in the forum in which the case was brought. In the interest of justice, a federal court may transfer a case filed in the wrong district to the correct district. *See,* 28 U.S.C. § 1406(a). Even if the Court

1  determines that venue is proper, it may transfer for the convenience of parties and witnesses. 28
2  U.S.C. § 1404(a).

At the November 9, 2017 status conference, the Parties stipulated that venue is improper in this District with respect to BRG Sports and that the action should be transferred pursuant to § 1406. The Court finds that this action could have been brought in the Northern District of Illinois because BRG Sports now has its principal place of business in the Northern District of Illinois and is subject to general personal jurisdiction in Illinois with respect to the Players' claims. The Court also finds that transferring this action to the Northern District of Illinois will serve the convenience of the parties and witnesses and promote the interests of justice because BRG Sports and its associated witnesses will experience serious inconvenience and substantial cost to litigate this action in California, a state with virtually no connection to the series of events underlying the Players' claims and no current connection to the plaintiffs or the defendants in this action.

Additionally, Illinois has a much stronger interest in the resolution of this action compared to the interests of California, because both of the Defendants are headquartered in the Northern District of Illinois and conduct substantial business in that district. BRG's previous presence in California appears to be the only factor in this entire case that would favor a venue in California, and venue would still be improper in this District in particular. The fact that the parties have stipulated to the transfer further underscores the appropriateness of an inter-district transfer.

Because the Court finds that venue is improper in this district with respect to BRG Sports, that the action could have been brought in the Northern District of Illinois against BRG Sports, and that transferring the action will serve the interests of justice and convenience of the parties and witnesses, the Court GRANTS the Parties' stipulation to transfer this action with respect to BRG Sports pursuant to § 1406.

**B.     Transfer Pursuant to § 1631 as to Riddell**

The transfer analysis with respect to Defendant Riddell is straightforward. The Parties have stipulated to a transfer of the claims against Riddell to the Northern District of Illinois pursuant to 28 U.S.C. § 1631. *See* Stipulation at 3. Under Section 1631, if an action is brought in the wrong court and the court finds "that there is a want of jurisdiction," a federal district court

8

"shall, if it is in the interest of justice, transfer such action…to any other such court in which the action…could have been brought at the time it was filed or noticed…" 28 U.S.C. § 1631; *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990). Generally, "transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'" *Id.* (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962)); *see also Amity Rubberized Pen Co. v. Mkt. Quest Grp. Inc.*, 793 F.3d 991, 996 (9th Cir. 2015) ("transfer will generally be in the interest of justice, unless it is apparent that the matter to be transferred is frivolous or was filed in bad faith").

Riddell initially filed a motion to dismiss for lack of personal jurisdiction, ECF 32, and the Players' opposed the motion, ECF 48. The Court held a hearing on the motion to dismiss for lack of personal jurisdiction on October 5, 2017. At the hearing, the Court indicated that at least with respect to Riddell, this case is akin to *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017) ("Bristol-Myers"). In *Bristol-Myers*, in the context of a mass tort action in state court, the United States Supreme Court reversed the California Supreme Court and held that California could not exercise specific jurisdiction over Bristol-Myers Squibb with respect to claims by non-residents of California who did not claim to have suffered harm in California. 137 S. Ct. at 1782. The Supreme Court held that the claims against the non-resident defendant, Bristol-Myers were missing "a connection between the forum and the specific claims at issue." *Id.* at 1781. "When no such connection exists, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

This Court explained that this case also involved non-California plaintiffs who did not play football in California, were not injured in California, and did not buy helmets in California. *See* Hearing Transcript 25:9-10 ("There's nothing California about it.") At the hearing and in their briefing, the Players conceded that the Court could not exercise general jurisdiction over Riddell, but argued that specific jurisdiction existed. *See, e.g.*, *id.* 13:1-5.

After the hearing, the Players withdrew their opposition to Defendants' motion to dismiss for lack of personal jurisdiction over Riddell and offered to transfer the action to a district that indisputably has personal jurisdiction over Riddell. *See* ECF 61. In order to resolve the personal

9

jurisdiction defect with respect to Riddell, the Parties then stipulated to transfer the entire action against Riddell pursuant to 28 U.S.C. § 1631 to the Northern District of Illinois where Riddell has its principal place of business. *See* ECF 65 at 3. Of course, that is the same district where Riddell's co-defendant and parent company, BRG Sports, is now headquartered.

The Court finds that it is appropriate and serves the interests of judicial efficiency and economy to transfer this action to a district where both personal jurisdiction and venue are proper as to all Defendants. Particularly with respect to Riddell, transfer pursuant to § 1631 is proper because Riddell is "at home" with its principal place of business in Illinois and thus, the Northern District of Illinois would have personal jurisdiction over Riddell. Accordingly, the Court GRANTS the Parties' stipulation to transfer the action to the United States District Court for the Northern District of Illinois as to Riddell pursuant to § 1631.

**IV. ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendant All American Sports is DISMISSED WITHOUT PREJUDICE on *in personam* jurisdiction grounds (ECF 67);
2. The Court GRANTS the Parties' stipulation to transfer this action to the Northern District of Illinois with respect to BRG Sports pursuant to 28 U.S.C. § 1406 and with respect to Riddell pursuant to 28 U.S.C. § 1631;

In light of the transfer of this action to the Northern District of Illinois with respect to Riddell and BRG Sports, and the stipulated dismissal without prejudice of Defendant All American Sports, the Court TERMINATES AS MOOT the following pending motions WITHOUT PREJUDICE:

1. Defendants' motion to dismiss the Complaint pursuant to 12(b)(6) (ECF 30)
2. The Players' motion for leave to amend the Complaint (ECF 52)
3. Defendants' motion to dismiss for lack of personal jurisdiction with respect to Riddell and All American Sports (ECF 32)
4. Defendants' motion to sever the Players' claims (ECF 31)

Disputes between the Parties regarding re-pleading and severance are properly directed to

the transferee Court, who can exercise jurisdiction over the Parties in an appropriate venue.  The Court DIRECTS the Clerk to TRANSFER this entire action to the United States District Court for the Northern District of Illinois.  Upon transfer of this action, the Clerk shall close the file.

Dated: November 21, 2017

_____
BETH LABSON FREEMAN
United States District Judge